[No. C076938. Third Dist. Apr. 7, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH ROBERT SHARPE, Defendant and Appellant.

## Counsel

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Stephen G. Herndon and Kevin M. Cornwall, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**NICHOLSON, J.**—Defendant Joseph Robert Sharpe, with several other men, went to someone else's marijuana garden in the night to steal the plants.

Confronted by the owner, the men knocked the owner down and fled. The owner pursued until one of the men brandished a gun. A few minutes later, defendant and the other men rammed the owner's truck. Convicted of robbery and sentenced to state prison for six years, defendant appeals.

On appeal, defendant asserts the judgment must be reversed based on several arguments. We conclude those arguments have no merit.[1] Defendant also asserts that the trial court abused its discretion in making the restitution award because it awarded the victim both (1) the decrease in fair market value of the truck resulting from the damage caused by the ramming and (2) the cost to repair the truck. (See Pen. Code, § 1202.4, subd. (f)(3)(A) [allowing court to use fair market value method *or* cost of repair method to determine restitution].) We conclude that the trial court could not apply both methods because it resulted in a windfall to the victim. We also conclude that the trial court improperly calculated restitution by awarding the victim the salvage value of the truck retained by the victim.

## FACTS

Jonah Smith lived on property in Butte County where he and two other people grew medical marijuana in a garden enclosed by a fence and gate. In the early morning hours of a day during harvest season, Smith was sleeping in his camp trailer next to the marijuana garden when he was awakened by noise from the garden. In the darkness, he saw four or five men in the garden. Smith went outside with his flashlight to the open gate of the marijuana garden and yelled at the men. The men in the garden ran out of the garden as Smith was running in, and Smith was knocked to the ground. The men ran down the long (about 200 feet) gravel driveway toward the road. Smith recognized one of the men as defendant and pursued him down the driveway.

Smith saw that the people running down the driveway in the darkness were carrying things, but he did not see marijuana in their hands.

While Smith was chasing defendant, another man, who was wearing a mask, came toward Smith brandishing a gun, so Smith stopped and walked quickly back up the driveway. The men who had been in the garden got into a van at the end of the driveway.

---

[1] Defendant contends (1) there was insufficient evidence of robbery because there was no evidence that force or fear was used in the taking or asportation of the marijuana; (2) the prosecutor committed misconduct by misstating the law regarding robbery; (3) the trial court erred by denying defendant's Penal Code section 1118.1 motion; (4) the trial court abused its discretion by denying defendant's midtrial motion to represent himself; (5) the trial court abused its discretion by ordering too much restitution; and (6) cumulative error requires reversal.

Smith got into his truck and drove to a local store. When he got there, the van that had been at his property and a white car, driven by the man who had brandished the gun at him at the property, both drove toward him and collided with his truck, disabling the truck. Smith fled to a ditch, and shots were fired at him.

When Smith returned to his property, he found that the chain on the gate at the end of the driveway had been cut. He called 911, and a deputy sheriff responded. Eleven marijuana plants had been cut down, and parts of the plants were scattered. A pile of marijuana was outside the fence of the marijuana garden. After the sun rose, Smith saw, in his words, "little pieces of marijuana cascaded down [the] driveway like bread crumbs."

At trial, defendant denied being present during the incident at the marijuana garden, but none of his contentions on appeal require us to relate the additional evidence presented of his involvement in the incident.

## PROCEDURE

The district attorney charged defendant by information with one count of robbery (Pen. Code, § 211), with an allegation that defendant served a prior prison term (Pen. Code, § 667.5). A jury found defendant guilty of robbery, and the trial court found true the prior prison term allegation.

The trial court sentenced defendant to five years in state prison for the robbery, with an additional year for the prior prison term. The court ordered defendant to pay $23,222.50 in restitution to Smith for damage caused, including to Smith's truck.

Additional facts and procedural history are related in the Discussion as they become relevant.

## DISCUSSION

### I–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

*Restitution Order*

■ Defendant contends the trial court abused its discretion when it determined the restitution amount to Smith, awarding both the decrease in

*See footnote, *ante*, page 741.

fair market value of the truck and the cost of repairing the truck. We conclude the trial court improperly awarded restitution based on both the fair market value method and the cost of repair method of determining restitution. We also conclude the trial court improperly calculated the award when applying the fair market value method.

At the restitution hearing, the prosecutor offered several documents to establish the restitution amount to Smith.[2]

First, the prosecutor introduced a letter from Smith's insurance company settling Smith's claim on the truck. According to the letter, the truck was worth $20,475.45 before it was damaged and had a salvage value of $3,250 after it was damaged.[3] Using this letter as evidence of the reduction in fair market value of the truck (prior value minus salvage value), the reduction in the fair market value of the truck as a result of defendant's crimes was $17,225.45.

Second, in the same letter, the insurance company agreed to pay Smith $1,291.91 for sales tax and $19 to obtain salvage certification from the Department of Motor Vehicles (DMV). Not stated in the letter, but reflected in the total amount paid to Smith, the insurance company reduced the payout by $1,000 for the deductible Smith had on his policy.

And third, the prosecutor introduced documentation that Smith spent $1,166.67 repairing the truck, $71 for a DMV printout, $198.47 for a rental car while the truck was not available, and $1,000 for the deductible on the insurance policy.

The trial court awarded $23,222.50 in restitution. This amount represented the sum of:

(1) $3,250 for the salvage value of the truck;

(2) $1,000 for the insurance deductible;

(3) $198.47 for rental car costs;

(4) $71 for a DMV printout;

---

[2] Restitution of $990.41 to the victim's compensation fund for money given to Smith to pay for his broken fence was ordered but is not in dispute on appeal.

[3] The evidence from the insurance company was considered to establish values, not as a collateral source of restitution. (See *People v. Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912].)

(5) $1,166.67 for parts to repair the truck; and

(6) $17,536.36 for the payout from the insurance company.

As noted above, the payout from the insurance company of $17,536.36 included: (1) $20,475.45 for the fair market value of the truck before defendant's crimes; (2) minus $3,250 for the salvage value of the truck because Smith retained the truck; (3) minus $1,000 for the insurance deductible; (4) plus $1,291.91 for sales tax; and (5) plus $19 for the salvage certificate fee.

At sentencing, defendant objected to inclusion of the repair costs ($1,166.67) and the salvage value of the truck ($3,250). The trial court implicitly overruled the objections by including those amounts in the restitution award.

### A. Fair Market Value Versus Cost of Repair

■ The trial court has broad discretion in choosing a rational method of calculating the amount of the economic loss suffered by a victim. The goal of direct restitution is to restore the victim to "the economic status quo." (*People v. Giordano* (2007) 42 Cal.4th 644, 658 [68 Cal.Rptr.3d 51, 170 P.3d 623]; see *id.* at pp. 663–664.) "A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall. [Citations.]" (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172 [107 Cal.Rptr.3d 895].)

■ Penal Code section 1202.4 addresses victim restitution. It provides that the amount to be awarded as restitution when something is damaged is the replacement cost of the property or the actual cost of repairing it when repair is possible. (Pen. Code, § 1202.4, subd. (f)(3)(A).) Section 1202.4, subdivision (f)(3)(A) provides for restitution consisting of "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible."

Undoubtedly, the task of determining restitution is more difficult when the victim retains and repairs a salvaged vehicle because the repaired vehicle is not as valuable as the vehicle before it was damaged, as it is now salvaged and registered as such. Under these circumstances, the cost of repair, alone, does not fully compensate the victim. For this reason, it may be better to base restitution on the fair market value method. In this case, there was evidence of the amount of the decrease in the value of the truck caused by defendant's crime. That amount was $17,225.45 (the prior fair market value of the truck,

minus the salvage value of the truck). Therefore, $17,225.45 fully accounted for the damage to the truck, based on the fair market value method of determining restitution, because defendant had a truck worth $20,475.45 before the crime and was left with a truck worth just $3,250 after the crime.

The trial court based its restitution order on the fair market value method, but it abused its discretion by also awarding the cost to Smith to repair the truck, which cost was $1,166.67. Having fully recovered the decrease in fair market value, Smith was not entitled to also recover the cost of repair because repairing the truck made it more valuable. Put another way, before the crime, Smith owned a truck that was worth more than $20,000. After the crime, Smith was left with a truck that was worth not much more than $3,000. Smith was compensated for this decrease in fair market value. However, if the truck is repaired, the value of the truck goes up, even though it does not go all the way up to the former fair market value. Therefore, adding the cost of repair improperly alters the results of the fair market value formula. For this reason, the fair market value method and the cost of repair method of determining restitution must be kept separate.

### B. Calculation Under Fair Market Value Method

Because Smith kept the truck, the trial court also erred in its calculations when it awarded the salvage value of the truck as part of the fair market value. It would be a windfall for him to receive the salvage value of the truck from defendant and also get to keep the salvaged truck.

Before defendant's crimes, Smith's truck was worth $20,475.45. If Smith did not get to keep the truck, that amount would have been the appropriate measure for awarding the fair market value. However, because Smith kept the truck that was worth $3,250 after the crimes, defendant's crimes only cost Smith, as far as the value of the truck, $17,225.45—the difference between the value of the truck before and after the crimes. Awarding $3,250 over and above the reduction in value of the truck constituted a windfall for Smith because he retained the truck valued at $3,250.

On appeal, defendant does not contend that the $3,250 award for the salvage value of the truck was improper, even though defendant objected to that award in the trial court. He claims in his opening brief that adding $3,250 to the award was permissible because the insurance company deducted that amount from its settlement with Smith. But defendant misses the point; $3,250 was deducted from the insurance settlement because Smith retained the truck that was worth $3,250.

The trial court should have begun its calculation of restitution based on fair market value by determining the reduction in value of the truck, which truck

Smith kept, instead of simply adopting the insurance company payout amount. Here, the reduction in value was $17,225.45.

One last observation concerning the trial court's award—this relating to the award to Smith of $1,000 because he had a $1,000 deductible on his insurance policy: if the trial court had started by determining the reduction in value of the truck, the $1,000 for the deductible on the insurance policy would have been irrelevant because, ultimately, it is the reduction in value not the insurance payout that the court must determine. (In effect, the trial court here subtracted $1,000 from the value of the truck by using the insurance payout amount and then added it back to the bottom line of the restitution award.)

With these principles in mind, the proper components of the restitution award, therefore, are as follows:

(1) $17,225.45 for the reduction in value of the truck;

(2) $198.47 for rental car costs;

(3) $71 for a DMV printout;

(4) $1,291.91 for sales tax; and

(5) $19 for the salvage certificate fees.

The total restitution award is the sum of those values: $18,805.83.

# VI

## *Cumulative Error**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is modified by reducing the restitution award to Smith to $18,805.83. As modified, the judgment is affirmed. The trial court is directed

---

*See footnote, *ante*, page 741.

to prepare an amended abstract of judgment reflecting the modification and to send the amended abstract to the Department of Corrections and Rehabilitation.

Blease, Acting P. J., and Hoch, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 12, 2017, S241847.